# Exhibit A

F305.2.2

**Catering Personnel**

NCL (Bahamas) Ltd., (hereinafter "Company" or "Employer") agrees to employ Watt, John, (hereinafter "Employee" or "Seaman") in the capacity set forth below, for the consideration and under the terms and conditions hereinafter stated, and "Employee" agrees to be so employed and to abide by the terms and conditions of this Employment Agreement ("Agreement") and the Collective Bargaining Agreement for Catering Personnel ("CBA").

| Last Name | First Name | Middle Name |
|---|---|---|
| Watt | John | Dryden |

| Address |
|---|
| Montego Bay #1 Post Office Lilliputt District |
| Montego Bay, St. James Jamaica |

| Telephone Number |
|---|
| 890 0097 575 4521 |

☐ New Hire   ☐ Rehire   ☐ Transferring Crew   ☒ Returning Crew

| Department | Position |
|---|---|
| Bar | Bartender |

| To Serve Initially On Board The: | Sign on Port | Sign On Date |
|---|---|---|
| Norwegian Gem | London, Dover | 10-05-2007 |

| Salary Per Month | Pay Effective Date |
|---|---|
| $1303.00 | 10-03-2007 |

| Scheduled Sign Off Port | Scheduled Sign Off Date |
|---|---|
| TBD | 07-20-2008 |

10/06/07

| Emergency Contact Name |
|---|
| Ternie Watt |

| Emergency Contact Address |
|---|
| Lilliputt Dist. Montego Bay, Jamaica Jamaica |

| Emergency Contact Telephone Number |
|---|
| 890 0097 |

| Other Agreements or Special Conditions: |
|---|
| Subject to Random Alcohol or Drug test. |
| Additional Monthly Incentive: $0 |

| Marital Status | Sex | Place of Birth |
|---|---|---|
| Married | Male | Westmoreland - JAM |

| First Hire Date | Date of Birth | Nationality |
|---|---|---|
| 02/01/1978 | 09/23/1940 | JAM |

**Status Changes**

| Position | Effective Date | Valid Until | Salary | Crew Initials |
|---|---|---|---|---|
| | | | | |

| Passport # | Passport Exp. | Visa Type | Visa Exp. Date |
|---|---|---|---|
| A2031045 | 02/13/2012 | C1D | 05/15/2012 |

| ARC, if Applicable | Social Security # | Home Airport |
|---|---|---|
| | | MBJ |

| Height | Weight | Eye Color | Hair Color |
|---|---|---|---|
| 5-9 | 160 | Brown | Black |

1. The Employee shall be initially employed on board the ship stated above. The Employee understands and agrees that he/she shall be subject to being transferred to any other ship now or hereafter operated, owned or managed by the Employer. Employee and the employment relationship established hereunder shall at all times be subject to and governed by the CBA, and the Employer's written policies concerning drug and alcohol use, sexual harassment, and complaint resolution process. The CBA is collectively bargained for by the Norwegian Seaman's Union and covers the employment relationship established herein notwithstanding whether the Employee is a member of the Norwegian Seaman's Union and any subsequent Protocol entered into between Employer and the Norwegian Seaman's Union. The Employee understands that the Norwegian Seaman's Union bargains for and on behalf of all employees and enters into a collective bargaining agreement or Protocol at regular intervals with the Employer whereby the terms of employment and various benefits are determined. The Employee understands and agrees that with respect to the Employer's obligations under general maritime law in the event of injury or illness, the terms of the CBA control and the Employee will be provided with benefits, including unearned wages, maintenance, cure and medical care and will be compensated in accordance with said CBA. The Employee acknowledges that he/she has had an opportunity to review said CBA.
2. Employee shall be responsible for the cost of transportation to the port of embarkation or place of hire. If Employee breaches this Agreement and is discharged for cause, any and all expenses resulting from Employee's discharge for cause shall be borne by Employee including all costs of repatriation to Employee's home. Employee understands and consents to forfeiture of any wages or benefits in the event of such a breach.
3. The Employee shall be subject to a Probationary Period of three (3) months following commencement of service during which the Employer reserves the right to discharge the Employee for any reason upon seven (7) days notice. Thereafter the employment pursuant to this Agreement can be terminated by either party without cause at any time upon seven (7) days prior written notice or seven (7) days wages in lieu of notice at the option of the Employer. However, upon termination by Employer without cause after the Probationary Period, Employee shall be entitled to receive, at the option of the Employer, either two (2) months notice of termination or in lieu of notice Employer may pay wages to the extent the notice was less that two (2) months which notice or payment shall be in full settlement of any and all claims associated with the employment relationship between Employer and Employee.
4. The normal working hours will be set by Employer in accordance with the CBA.
5. Any violation of the ship's rules, regulations or legal requirements including, without limitation, those concerning contraband, smuggling, theft or embezzlement may be punished by dismissal without further notice. Any violation of the ship's rules and regulations or other offenses including, without limitation, disobedience to any lawful command, breach or neglect of duty, fraud, intoxication, scandal, aggression, conviction of a crime, or leaving the vessel or duty station without permission will also be disciplined as provided in the Employer's Complaint Resolution Process. The Merchant Shipping Act, 1976 of the Bahamas or by dismissal without notice and shall be deemed wilful misconduct. All repatriation expenses of the dismissed Employee and all costs for supplying his relief shall be for the dismissed Employee's account. Employer's exercise of its rights to terminate hereunder shall be without prejudice to any other remedy to which Employer may be entitled.
6. Seaman certifies that all the information he provided and disclosed on his Application for Employment and Report of Medical Examination is true and complete in every respect, and further agrees that if the information he provided therein was inaccurate or incomplete, Seaman may not be allowed to join the vessel and/or his employment may be terminated in the Employer's discretion and Seaman shall be solely responsible for all repatriation expenses.
7. At the time of employment, the Employee must have a passport valid for a minimum of one (1) year and both C and D visas from the United States.
8. Wages shall start one day prior to the Employee joining the ship and shall continue up to and including the signoff date. Wages will be paid once a month in U.S.D. currency. All shipboard accounts of Employee, e.g., bar bill, shop bills, etc., must be settled in full prior to Employee disembarking the ship. Any outstanding amount will be deducted from Employee's paycheck.
9. The Employer reserves the right to assign the Employee to a lower grade position if the Employee proves unable or unsuitable to perform in the position recruited or if a position is no longer available in the position recruited.
10. Employer and Employee agree that any and all claims, disputes or controversies whatsoever including, without limitation, claims for personal injury, maintenance, cure or wages arising out of or in connection with the employment relationship established herein shall be commenced, filed and heard in a court or administrative body of appropriate jurisdiction as provided in the CBA. In the event that any part of this Agreement is found by a court of competent jurisdiction to be unenforceable, or null and void, such findings shall not affect any other parts of this Agreement not expressly found to be unenforceable. All parts of this Agreement not specifically found to be unenforceable shall remain in full force and effect.
11. Employee hereby expressly waives all physician/patient confidentiality and hereby specifically authorizes any physician, hospital, physical therapist, psychologist, psychiatrist and any other health care provider of any nature whatsoever who has provided care to employee to release to any authorized representative of Employer any medical record, chart, note, report, test result, or any other document regarding the care and treatment of the Employee. The Employee further authorizes any health care provider to discuss his or her care, treatment and prognosis with any authorized representative of Employer.
12. **ARBITRATION** - Seaman agrees, on his own behalf and on behalf of his heirs, executors, and assigns, that any and all claims, grievances, and disputes of any kind whatsoever relating to or in any way connected with the Seaman's shipboard employment with Company including, but not limited to, claims such as personal injuries, Jones Act claims, actions for maintenance and cure, unseaworthiness, wages, or otherwise, no matter how described, pleaded or styled, and whether asserted against Company, Master, Employer, Ship Owner, Vessel or Vessel Operator, shall be referred to and resolved exclusively by binding arbitration pursuant to the United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards (New York 1958)("The Convention"), except as otherwise provided in any government mandated contract, such as the Standard POEA Contract for Seafarers from the Philippines. The arbitration shall be administered by the American Arbitration Association ("AAA") under its International Dispute Resolution Procedures. No dispute may be joined with another lawsuit, or in an arbitration with a dispute of any other person, or resolved on a class-wide basis.
A single Arbitrator is to be jointly appointed by the NSU and/or the Seaman, on one side, and Company, on the other side, unless the parties cannot agree to an Arbitrator, in which case the AAA shall select the Arbitrator from among six (6) names, three submitted by the NSU/the Seafarer and three submitted by Company. The language of the arbitration shall be English. The place of the arbitration shall be the Seaman's country of citizenship, unless arbitration is unavailable under The Convention in that country, in which case, and only in that case, said arbitration shall take place in Nassau, Bahamas. The substantive law to be applied to the arbitration shall be the law of the flag state of the vessel.
Each party will, upon the written request of the other party, promptly provide the other with copies of documents relevant to the issues raised by any claim or counterclaim on which the producing party may rely in support of or in opposition to any claim or defense. Any dispute regarding discovery, or the relevance or scope thereof, shall be determined by the arbitrator according to the IBA Rules on the Taking of Evidence in International Commercial Arbitration, which determination shall be conclusive. All discovery shall be completed within sixty (60) days following the appointment of the arbitrator. At the request of a party, the arbitrator shall have the discretion to order examination by deposition of witnesses to the extent the arbitrator deems such additional discovery relevant and appropriate. Depositions shall be limited to a maximum of six (6) per party and shall be held within thirty (30) days of the

It is the responsibility of the user to verify that the issue date on any printed copy matches the issue date of the current online NCL intranet document.

NORWEGIAN CRUISE LINE / ORIENT LINES

F305.2.2

making of a request. Additional depositions may be scheduled only with the permission of the arbitrator and for good cause shown. Each deposition shall be limited to a maximum of three (3) hours duration. All objections are reserved for the arbitration hearing except for objections based on privilege and proprietary or confidential information.

The Company and the Seaman acknowledge that they voluntarily and knowingly waive any right they have to a jury trial. The arbitration referred to in this Article is exclusive and mandatory. Lawsuits or other proceedings between the Seaman and the Company may not be brought except to enforce the arbitration provision of this Agreement or to enforce a decision of the Arbitrator. The Seaman shall continue to satisfactorily and in good faith perform his/her duties and the parties shall abide by this Agreement while disputes or grievances are being resolved.

**Employee Acknowledgment**

I, the undersigned Employee, declare that I have read and understood the terms of this Agreement and that no oral promises or other agreements have been made to me and that I cannot claim and am not entitled to any additional benefits of any kind whatsoever except those provided in this Agreement. I declare that the Application for Employment and Report of Medical Examination, previously filled out and signed, is true and correct in every respect and that, as part of my Employment Agreement, I agree to abide by the Conditions set forth in the Ship's Article and by such Company rules and regulations that are in effect from time to time.

I, the undersigned, have received and signed copies of the CBA, Drug and Alcohol Policy for Shipboard Personnel, Complaint Resolution Process Policy, and Sexual Harassment Policy for Shipboard Personnel, and agree that I will abide by the terms and conditions contained in each.

Executed this __06th__ day of __October__, 2007, at __Dover__

Employee Signature

For and on behalf of NCL (Bahamas) Ltd., Employer

Distribution (Original to Employee) ~ 1: Ship Personnel Dept. Miami 1: Onboard Personnel File

It is the responsibility of the user to verify that the issue date on any printed copy matches the issue date of the current online NCL intranet document.