Exhibit C

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI- DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO:

JOHN D. WATT,

       Plaintiff,

v.

NCL (BAHAMAS) LTD d/b/a NCL,

       Defendant.

_____/

## COMPLAINT FOR SEAMAN

    The Plaintiff, JOHN D. WATT sues the Defendant, NCL (BAHAMAS) LTD d/b/a NCL,

and alleges:

    1.     This is an action seeking damages in excess of Fifteen Thousand ($15,000.00)

Dollars.

    2.     DATE OF ACCIDENT:    March 2008

    3.     PLACE OF ACCIDENT:    Santiago

    4.     VESSEL:    *"M/V NORWEGIAN DREAM"*

    5.     FACTS OF ACCIDENT:    The Plaintiff (Crew ID. No.: 041552) was working

in the scope and course of his employment as a Bartender earning $1,300.00 a month for

working 12 to 14 hours a day, 7 days a week without a day off.  Plaintiff was employed with

NCL for thirty years.

    6.     In March 2008, Plaintiff was working aboard the vessel Norwegian Dream. As is

always the case aboard ship, he worked almost the entire day and went to bed. When he woke up

he had a severe pain in his left knee.

7.     Plaintiff's job on the ship was very physical and required him to constantly lift and carry heavy loads, including boxes full of soda, liquor, and beers. Plaintiff's job also required Plaintiff to constantly stoop, bend, walk, and constantly climb and descend the stairs between the decks on the vessel.

8.     When Plaintiff woke up feeling the pain in his left knee, he went to see the ship's doctor aboard the Norwegian Dream vessel, and reported experiencing a strong pain in the left knee. The ship doctor to which he reported the left knee pain merely gave Plaintiff pain tablets and found him fit for duty without the benefit of a single diagnostic test or a proper examination.

9.     However, Plaintiff had to return to see the ship's doctor the following morning due to the constant and now excruciating pain that he was feeling in the left knee after having worked the night before. During this visit, like before, the ship's doctor merely gave Plaintiff some additional tablets for pain and without any diagnostics tests or a proper examination, sent Plaintiff back to work again despite the continuous complaints of left knee pain.

10.     When the Plaintiff awoke the following morning after working again, his knee was badly swollen and very painful. Plaintiff went back to the ship's doctor yet again, who following the standard practice and procedure onboard the Defendant's vessels gave Plaintiff more pain pills and sent him back to work.

11.     Plaintiff continued working on pain pills, but the pain in the left knee worsened. Plaintiff returned to the ship's doctor again and was finally promised to be sent shoreside for diagnostic tests and a proper medical examination but told Plaintiff he did not see anything wrong with his left knee.

12.     The ship doctor's failure to do a proper diagnosis or examination of the Plaintiff to find out the cause of the pain in the left knee aggravated Plaintiff's medical condition and constituted medical malpractice.

THE WINGATE LAW FIRM, LLC 66 WEST FLAGLER STREET, 410 CONCORD BUILDING, MIAMI, FLORIDA  33130, 305 371-8654

13.     Plaintiff's condition reached the point where he could not even take the stairs between the decks due to knee pain and was finally signed off the ship on March 29, 2008 and sent home to Jamaica for medical treatment. The ships physician for the Norwegian Dream wrote a letter dated March 29, 2008 stating: "We are now retiring him on medical grounds as he does not conform to standards of employment as per IMO. He suffers from uncontrolled diabetes type 2, uncontrolled hypertension as well as progressive osteo-arthiritis of both knees; the left being more severely affected than the right." See **Exhibit "A"**.

14.     Once home, Plaintiff immediately contacted NCL's agent in Jamaica to coordinate the medical treatment as soon as possible. Plaintiff first saw Dr. Kenneth Lee, in April 2008, who just like the doctors on the ship, merely gave Plaintiff tablets and told him to return in one week.

15.     Plaintiff returned to see doctor in a week as ordered, but was just told to continue to take the tablets and to return the next week again. Plaintiff did as he was told, but the pain continued to worsen and Plaintiff had to return to see the doctor again on May 5, 2008. This time, like before, Plaintiff was merely given a prescription for stronger pain medication.

16.     Plaintiff was seen two weeks later again, and was given another prescription for more tablets and was ordered to return in another week. Finally in May 2008, Plaintiff was examined and told that his left knee pain was being caused by arthritis. Plaintiff also saw the doctor through June, July and August 2008 as well, yet the doctor merely continued to prescribe more pain tablets without the benefit of any diagnostic tests.

17.     Since Plaintiff continued to complain of left knee pain, the doctor told Plaintiff that he strongly suspected a meniscal tear and that he needed to have an x-ray to confirm the diagnosis. The doctor finally agreed to have Plaintiff undergo an x-ray of the left knee in September – six months after he first reported the left knee pain to the ship's doctor. See **Exhibit "B"**.

18.     Plaintiff returned to see the doctor again after the x-ray but was told that the x-ray "did not give a clear view" and an MRI of the left knee was then requested. The MRI was done on September 16, 2009 and it found that Plaintiff had a *"discord lateral meniscus with tear anterior horn lateral meniscus."* See Exhibit "C"

19.     Plaintiff saw Dr. Don Gilbert afterwards, who informed him that he had torn ligaments in the left knee and needed to undergo surgery – arthroscopy of the knee. See **Exhibit "D".** Plaintiff underwent *left knee surgery* on *October 27, 2008* – seven months after he first reported the left knee pain. See **Exhibit "E"**

20.     After the surgery, Plaintiff saw Dr. Gilbert in November 2008 to remove the "cast" and was told that everything was good. However, Plaintiff did not feel that everything was good, and returned to see the doctor two weeks after due to continuous left knee pain. The doctor gave him pain tablets and ordered physiotherapy. Dr. Gilbert noted that Plaintiff's prognosis was *"guarded as he has significant loss of articular cartilage on the lateral tibial plateau."* See **Exhibit "F"**

21.     Plaintiff did as he was told, and started physiotherapy in November 2008. However, Plaintiff had pain during the physiotherapy, which Plaintiff reported to Dr. Gilbert on December 12, 2008 when he saw him. Dr. Gilbert reported: "He reported that he has occasional pain in the left knee and discomfort getting up from a seated position." See **Exhibit "G".**

22.     Plaintiff continued his physiotherapy sessions until January 5, 2009. However, the left knee pain was not resolved and Plaintiff went to see another company doctor (Kenneth Lee) on January 30, 2009 to whom he reported that he was still having *"pain in the knee on standing."* See **Exhibit "H".**

23.     On February 13, 2009, Plaintiff saw Dr. Gilbert and reported having a great deal of pain and discomfort in the left knee "going across the knee." The doctor was surprised to hear that Plaintiff was not receiving physiotherapy as it had been stopped by NCL. Dr. Gilbert

advised Plaintiff to write to NCL asking to authorize the physiotherapy he had ordered. Plaintiff wrote to NCL's agent (Mr. Shane): *"I am asking why Miami stop therapy on my knee and I am still feeling the pain."* See Exhibit **"I"**

24.     Plaintiff returned to the doctor again in March 2009 due to the continuous left knee pain and was recommended a knee brace this time. However, the doctor did not have his size available and NCL's agent tried to force Plaintiff to pay for the brace himself despite knowing that NCL has duty to guarantee payment for medical treatment. Plaintiff explained to NCL's agent that he had no money as he was home on medical treatment and injured. The agent then told him he would have to wait for his knee brace for weeks.

25.     The doctor once again told Plaintiff that he still needed physiotherapy. Plaintiff wrote to NCL's agent (Mr. Shane) again: *"I am requesting a little more physiotherapy on my knee because it is still paining me a little."* See Exhibit **"J"**.

26.     Frustrated and confused Plaintiff was forced to retain counsel in May 2009 to help him receive the medical treatment he so desperately needed. See **Exhibit "K"**. In response, on June 4, 2009, NCL wrote advising that they had arranged for Plaintiff to be seen by Dr. Gilbert on June 9, 2009. See **Exhibit "L"**. Dr. Gilbert saw Plaintiff and ordered more physiotherapy.

27.     On July 15, 2009, Plaintiff finished his physiotherapy sessions, and the physiotherapist wrote a report indicating that Plaintiff *"has improved in strength, pain levels and function of the (L) lower extremity, he is still significantly limited in dynamic balance and stability of the left knee ... He would benefit from additional sessions to improve strength and stability, normalize gait pattern and assure safety in high level weight bearing activities."* See Exhibit **"M"**.

28.     NCL had also failed to schedule physiotherapy for Plaintiff despite the recommendations of the physiotherapist in July. Plaintiff's counsel wrote to NCL on August 18, 2009 and August 31, 2009, asking NCL to schedule the prescribed physiotherapy for Plaintiff.

NCL finally approve and/or schedule the physiotherapy recommended in July to start on September 18, 2009 – *over two months after it was prescribed, despite Plaintiff's continuous complaints of pain since undergoing surgery.*

29.     To Plaintiff's shocking surprise, in *October*, NCL's agent gave him a copy of a letter by Dr. Don Gilbert, dated *August 11, 2009*, indicating that he would "*require a left total knee replacement in the future,*" and ordered additional physiotherapy. Plaintiff's counsel wrote to Defendant asking for an explanation as to the delay in providing a copy of the letter. To date, Defendant has failed to reply. See **Exhibit "N"**.

30.     Plaintiff cannot walk for any distance, stand for long periods or go up and down stairs without significant pain, and currently uses a cane.  As a result of the injuries suffered due to the unsafe conditions of the Defendant's vessel and the subsequent delay in providing prompt, proper and adequate medical treatment Plaintiff's medical condition was aggravated. As a result, Plaintiff is permanently disabled and will not be able to pass the physical necessary to work aboard a cruise ship in the future, which has/will cause Plaintiff to suffer severe economic losses and damages now and in the future.

31.     Defendant(s), at all times material hereto, personally or through an agent:

      a.     Operated, conducted, engaged in, or carried on a business venture in this state and/or county or had an office or agency in this state and/or county.

      b.     Was/Were engaged in substantial activity within this state.

      c.     Operated vessels in the waters of this state.

      d.     Committed one or more of the acts stated in Florida Statutes, Section 48.081, 48.181 or 48.193.

      e.     The acts of Defendant(s) set out in this Complaint occurred in whole or in part in this county and/or state.

32.     Defendant(s) is/are subject to the jurisdiction of the Courts of this state.

33.     The causes of action asserted in this Complaint arise under the Jones Act, 46 U.S.C., Section 688, and the General Maritime Law of the United States.

34.     The vessel was in navigable waters at all times material hereto.

35.     At all times material hereto, the vessel was owned, operated, managed, maintained and/or controlled by Defendant, NCL (BAHAMAS) LTD d/b/a NCL.

**COUNT I**
**JONES ACT NEGLIGENCE**

Plaintiff readopts and realleges paragraphs 1 through 35 as if stated herein verbatim and further alleges:

36.     It was the duty of Defendant to provide the Plaintiff with a safe place to work.

37.     On or about the above date, Plaintiff was injured due to the fault and negligence of Defendant and/or its agents, servants and/or employees as follows:

    a.     Failure to use reasonable care to provide and maintain a safe place to work for Plaintiff, fit with proper and adequate machinery, crew and equipment;

    b.     Failure to use reasonable care to provide Plaintiff a safe place to work;

    c.     Failure to promulgate and enforce reasonable rules and regulations to insure the safety and health of the employees and more particularly the Plaintiff, while engaged in the course of his employment on said vessel;

    d.     Failure to use reasonable care to provide Plaintiff with a safe place to work, having inadequate and inexperienced crew performing the task that was being performed at the time of the accident, and othiswise failing to use reasonable care to maintain the work place in a safe condition.

    e.     Failure to use reasonable care to make reasonable and periodic inspections of said vessel and its equipment.

    f.     Failure to provide adequate training, instruction and supervision to crewmembers and Plaintiff.

THE WINGATE LAW FIRM, LLC 66 WEST FLAGLER STREET, 410 CONCORD BUILDING, MIAMI, FLORIDA  33130, 305 371-8654

g.    Failure to provide prompt, proper and adequate medical care which aggravated Plaintiff's injuries and caused him additional pain and disability;

h.    Failure to provide Plaintiff and othis crewmembers reasonable hours of employment so as to not overwork them to the point of not being physically fit to carry out their duties;

i.    Failure to ascertain the cause of prior similar accidents so as to take measures to prevent their reoccurrence and more particularly Plaintiff's accident.

j.    Failure to follow sound management practices with the goal of providing Plaintiff a safe place to work. Prior to Plaintiff's accident, Defendant failed to investigate the hazards to Plaintiff and then take the necessary steps to eliminate the hazards, minimize the hazard or warn the Plaintiff of the danger from the hazard.

38.    Defendant knew of the foregoing conditions causing Plaintiff's accident and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care should have learned of them and corrected them.

39.    As a result of the negligence of Defendant, the Plaintiff was injured about his body and extremities, suffered pain thisefrom, incurred medical expenses in the care and treatment of his injuries, suffered physical handicap, lost wages and his working ability has been impaired. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future.

40.    In the alternative, Plaintiff had a pre-existing condition which was aggravated and/or activated by Defendant's action.

WHISEFORE, Plaintiff sues Defendant, NCL (BAHAMAS) LTD d/b/a NCL, for compensatory damages and demands a trial by jury of all issues so triable.

## COUNT II
## UNSEAWORTHINESS

Plaintiff readopts and realleges paragraphs 1 through 35 as if stated herein verbatim and further alleges:

THE WINGATE LAW FIRM, LLC 66 WEST FLAGLER STREET, 410 CONCORD BUILDING, MIAMI, FLORIDA  33130, 305 371-8654

41.     On or about the previously stated date, Plaintiff was a seaman and a member of the crew of Defendant's vessel which was in navigable waters.

42.     At all times material hereto, the vessel was owned, managed, operated and/or controlled by Defendant.

43.     Defendant had the absolute nondelegable duty to provide Plaintiff with a seaworthy vessel.

44.     On or about the previously stated date, the unseaworthiness of Defendant's vessel was a legal cause of injury and damage to Plaintiff by reason of the following:

    a.     The vessel was unsafe and unfit due to the conditions created by Defendant's conduct stated in paragraph 37;

    b.     The vessel was not reasonably fit for its intended purpose;

    c.     The vessel's crew and Plaintiff was not properly trained, instructed or supervised;

    d.     The vessel did not have a fit crew;

    e.     The vessel did not have adequate manpower for the tasks being performed;

    f.     The crew and Plaintiff were overworked to the point of being exhausted and not physically fit to carry out their duties.

    g.     The Plaintiff was assigned and ordered to perform tasks involving carrying heavy loads.

    h.     The Plaintiff was given negligent orders by his supervisors.

    i.     The Plaintiff was ordered to carry heavy loads with inadequate safety equipment.

45.     As a result of the unseaworthiness of the vessel, the Plaintiff was injured about his body and extremities, suffered pain, incurred medical expenses in the care and treatment, suffered physical handicap, lost wages and his working ability has been impaired. The injuries are permanent or continuing in nature and Plaintiff will suffer losses and impairments in the future.

THE WINGATE LAW FIRM, LLC 66 WEST FLAGLER STREET, 410 CONCORD BUILDING, MIAMI, FLORIDA  33130, 305 371-8654

46.     In the alternative, Plaintiff had a pre-existing condition which was aggravated and/or activated by Defendant's action.

WHISEFORE, Plaintiff sues Defendant, NCL (BAHAMAS) LTD d/b/a NCL, for damages, including pre-judgment interest and demands a trial by jury of all issues so triable.

### COUNT III
### FAILURE TO PROVIDE MAINTENANCE AND CURE AND UNEARNED WAGES

Plaintiff readopts and realleges paragraphs 1 through 35 as if stated herein verbatim and further alleges:

47.     On or about the previously stated date, Plaintiff, while in the service of the vessel as a crew member, developed knee pain.

48.     Under the General Maritime Law of the United States, Plaintiff, as a seaman, is entitled to recover maintenance and cure from Defendant until he is declared to have reached maximum medical possible cure, which Plaintiff has not been so declared.

49.     Defendant unreasonably, willfully and callously delayed, failed and refused to pay Plaintiff's entire maintenance and cure, knowing that Plaintiff needs additional medical treatment, including total knee replacement surgery.

50.     Defendant's failure to provide Plaintiff's maintenance and cure is unreasonable, willful, arbitrary, capricious, and in callous disregard for Plaintiff's rights as a seaman.  As such, Plaintiff is entitled to attorney's fee under the General Maritime Law of the United States.

WHISEFORE, Plaintiff sues Defendant, NCL (BAHAMAS) LTD d/b/a NCL, for damages, including attorney's fees and pre-judgment interest and demands a trial by jury of all issues so triable.

SOTOLONGO, P.A.
13499 Biscayne Blvd
Tower Suite Two – 18th Floor
Miami, Florida  33181

Tel: (305) 371-8654

BY _____

Peter P. Sotolongo (FBN 0584101)

THE WINGATE LAW FIRM, LLC 66 WEST FLAGLER STREET, 410 CONCORD BUILDING, MIAMI, FLORIDA  33130, 305 371-8654

EXHIBIT A



## NORWEGIAN CRUISE LINE
### FREESTYLE CRUISING

Date: March 29th, 2008

TO WHOM IT MAY CONCERN

RE: John Watt  DOB 09/23/1940  Aged 67 years

Dear Doctor

This man has a service record with our company spanning 30 years! We are now retiring him on medical grounds as he does not conform to standards of employment as per IMO.

He suffers from uncontrolled diabetes type 2, uncontrolled hypertension as well as progressive osteo-arthritis of both knees; the left being more severely affected than the right.

We are discharging him on Atenolol 50mg daily, Enalapril 5mg daily as well as Glyburide 2,5mg BID. He has his own glucometer which needs to be serviced and calibrated.

Would you please take over his further management as he has a tendency to stop taking his medication at times and then to turn up at the medical centre totally out of control with both conditions!

Best regards

DR IAN DU PLESSIS
SHIPS PHYSICIAN
NORWEGIAN DREAM
meddr08@ncl.com
Tel. 8360

Norwegian Cruise Line®
7665 Corporate Center Drive | Miami FL 33126

**EXHIBIT B**



**Onyx-RAD**



**EXHIBIT C**

MAR-03-2009 12:31 PM   SPEEDY-SUPPORT-SERVICES        876 9528556              P.23
'9/17/2008  16:29 6849515                NCI

## Northcoast Imaging MRI Services

Suite 37, Montego Freeport Shopping Centre, Montego Bay, St. James
Tel: (876) 684-9658-7 Fax: (876) 684-9515

## MRI Report

**Name:** Watt, John                     **Number:** 3371

**Age/DOB:** 23-09-40                    **Date:** September 16, 2008

**Physician:** Dr. Gilbert                **EXAMINATION:** MRI left knee

**CLINICAL:** To rule out osteochondral lesion left medial condyle or medial articular facet of the patella.

**TECHNIQUES:** Multiplanar magnetic resonance imaging of the left knee was performed using standard sequences.

**FINDINGS:**

There is linear abnormal signal intensity present within the anterior horn of the lateral meniscus which abuts the superior articulating surface consistent with a Grade 3 tear. There is also a discoid lateral meniscus. The medial meniscus is intact. The anterior and posterior cruciate ligaments are also intact. The quadriceps tendon and patellar ligaments are intact. The medial and lateral collateral ligament complexes are also intact. There is a small suprapatellar knee joint effusion. Multiple varicosities are evident in the anterior medial aspect of the knee. There is no evidence of a Baker's cyst. The marrow signal intensity is otherwise within normal limits. There is no evidence of chondromalacia patellae.

**IMPRESSION:**

Discoid lateral meniscus with tear anterior horn lateral meniscus.

Thank you for referral of this patient.

Carlene Gentles, MD
MBBS, Diplomate American Board of Radiology
Consultant Radiologist
CG:sa

**EXHIBIT D**

MAR-03-2009 12:23 PM   SPEEDY-SUPPORT-SERVICES   876 9520556   P.09



**MEDICAL CENTRE**
HALF MOON SHOPPING VILLAGE
P.O. BOX 2520, HALF MOON P.O.
ROSEHALL, MONTEGO BAY, JAMAICA
FALMOUTH BRANCH: 13 RODNEY STREET

" Where There Is Hope.... There Is Life "

Tel: (876) 953-3649/3961/9310/2712
Fax: (876) 953-9160
email: mobayhope@cwjamaica.com
www.mobayhope.org
TEL: (876) 617-5511 • FAX: (876) 617-5903

October 13, 2008

Mr. Shane Moxam
Port Agent
Lannaman and Morris (Shipping) Ltd.
Montego Freeport

Dear Mr. Moxam

**RE: WATT, JOHN**

Mr. John Watt presented to me on September 12, 2008 with a history of pain in the left knee which makes ascending stairs difficult. On examination of the knee there were obvious varicosities and it was otherwise normal except he could not perform the squat test. An MRI of the left knee done on September 16, 2008 showed a discord lateral meniscus with a tear of the anterior horn.

Mr. Watt will require arthroscopy of the knee. I will have to do this procedure at the St. Josephs Hospital in Kingston because MoBay Hope does not have the facilities. Outlined below are the costs associated with the procedure.

| Procedure: | Arthroscopic Menisectomy |
|---|---|
| Surgeon's Fee: | $ 70,000.00 |
| Assistant's Fee: | $ 25,000.00 |
| Anaesthesist's Fee: | $ 35,000.00 |
| Total | $130,000.00 |

FAXED
13.10.08

Please note this does not include the hospital's fee. The St. Joseph's Hospital can be contacted to determine the hospital fees for the above procedure.

Yours sincerely,

Dr. Don Gilbert, MBBS, FRCSEd, DM
Orthopedic Surgeon

BOARD OF DIRECTORS: Sydney Engel (Chairman), Jaime L. Delgado (Secretary), Ripton Macpherson, Kumar Samtani, Denny Chandiram, Richard Russell, Joseph Hylton, Sylvia Engel, James Goren, D. Wayne Brackin, Ambassador Glen A. Holden
Honorary Board Members: The Hon. Clarence Nelson (Custos of St. James), The Hon. Royland Dancroft-Barret (Custos of Trelawny), The Hon. Mavis Witter-King (Custos of Hanover).

EXHIBIT E

MAR-03-2009 12:33 PM   SPEEDY-SUPPORT-SERVICES   876 9528556

# ST. JOSEPH'S HOSPITAL
## OPERATIVE RECORD

PATIENTS NAME: John Watt

AGE: 68                                    SEX: M

DATE: 26/10/2008              HOSP.NO:

| NAME OF PROCEDURE | | BEGAN: | AM PM | ENDED | AM PM |
|---|---|---|---|---|---|
| Arthroscopy and partial Meniscectomy | | | | | |

| SURGEON: Dr Gilbert. | ASSISTANT SURGEON: Dr. Minott. | ANESTHESIST Dr J. Minott |
|---|---|---|

| SCRUB TECHNOLOGIST B/T McLeod. | CIRCULATING NURSE |
|---|---|

| PRE-OPERATIVE DIAGNOSIS Torn anterior horn lateral meniscus (R) Knee | POST-OPERATIVE DIAGNOSIS |
|---|---|

| SPECIMEN REMOVED | HISTOLOGY REQUESTED | YES NO |
|---|---|---|

## DESCRIPTION OF PROCEDURE

Findings:   Superior compartment: - Normal articular surface of patella.

— Normal articular surface of femoral condyles.

Medial compartment: - Femoral condyle and Tibial plateau normal

— Medial meniscus normal.

Intercondylar notch: - ACL intact.

Lateral compartment: - Tear in periphery of anterior horn of lateral
meniscus with fraying of edges.

Procedure:  The (R) lower limb was exsanguinated and a tourniquet applied
on the thigh. Standard anteromedial and anterolateral portals were
made and the above findings noted. The anterior half of the meniscus
was cut away and the posterior remnant trimmed and left insitu.
The portals were closed with 3/0 monocryl.

SIGNATURE OF SURGEON



EXHIBIT F

# MOBAY HOPE

**MEDICAL CENTRE**
HALF MOON SHOPPING VILLAGE
P.O. BOX 2520, HALF MOON P.O.
ROSEHALL, MONTEGO BAY, JAMAICA
**FALMOUTH BRANCH:** 13 RODNEY STREET

*" Where There is Hope..... There is Life "*

Tel: (876) 953-3649/3961/9310/2712
Fax: (876) 953-9160
email: mobayhope@cwjamaica.com
www.mobayhope.org
TEL: (876) 617-5511 • FAX: (876) 617-5903

November 10, 2008

Mr. Shane Moxam
Port Agent
Lannaman and Morris (Shipping) Ltd.
Montego Freeport

Dear Madam:

**RE: JOHN WATT**

Mr. John Watt had arthroscopic partial menisectomy of the lateral meniscus of the left
knee on October 26, 2008 and was reviewed on October 31, 2008. At this time he said he
no longer had knee pain and could bend the knee with no difficulty. The arthroscopic
portals were healthy with no signs of infection and so Mr. Watt has been sent to
physiotherapy to strengthen the quadriceps and hamstring muscles and maintain the range
of motion in the knee. I will review him on December 12, 2008 and I expect him to make
a satisfactory recovery. However, his prognosis is guarded as he had significant loss of
articular cartilage on the lateral tibial plateau.

I will keep you informed about his progress.

Yours sincerely,

Dr. Don Gilbert, MBBS, FRCSEd, Dm
Orthopedic Surgeon

**BOARD OF DIRECTORS:** Sydney Engel (Chairman), Jaime L. Delgado (Secretary), Ripton Macpherson, Kumar Samtani,
Denny Chandiram, Richard Russell, Joseph Hylton, Sylvia Engel, James Goren,
D. Wayne Brackin, Ambassador Glen A. Holden
Honorary Board Members: The Hon. Clarence Nelson (Custos of St. James), The Hon. Royland Bancroft-Barrett (Custos of Trelawny),
The Hon. Mavis Witter-King (Custos of Hanover).

EXHIBIT G

# MOBAY HOPE

**MEDICAL CENTRE**
HALF MOON SHOPPING VILLAGE
P.O. BOX 2520, HALF MOON P.O.
ROSEHALL, MONTEGO BAY, JAMAICA
FALMOUTH BRANCH: 13 RODNEY STREET

*" Where There Is Hope.... There Is Life "*

Tel: (876) 953-3649/3981/9310/2712
Fax: (876) 953-9160
email: mobayhope@cwjamaica.com
www.mobayhope.org
TEL: (876) 617-5511 • FAX: (876) 617-5903

December 12, 2008

Mr. Shane Moxam
Port Agent
Lannaman and Morris (Shipping) Ltd.
Montego Freeport

Dear Mr. Moxam

**RE: WATT, JOHN**

I saw the above patient today and he reported that he has occasional pain in the left knee and discomfort on getting up from a seated position. On examination there was no swelling of the knee and the arthroscopic portals have healed. There was full range of motion in the knee and he easily got up from a seated position.

Mr. Watt has degenerative changes in the lateral tibial plateau of the knee and if he returns to his previous job which required prolonged standing and lots of stooping he will get accelerated creak in the knee thereby worsening the arthritis that is already present. It is in his best interest to be transferred to a less physically demanding area or be retired. I am to see him again in three month.

Yours sincerely,

Dr. Don Gilbert, MBBS, FRCSEd, DM

Orthopedic Surgeon

FAXED
15.12.08

BOARD OF DIRECTORS: Sydney Engel (Chairman), Jaime L. Delgado (Secretary), Ripton Macpherson, Kumar Samtani, Danny Chandiram, Richard Russell, Joseph Hylton, Sylvia Engel, James Goren, D. Wayne Brackin, Ambassador Glen A. Holden.
Honorary Board Members: The Hon. Clarence Nelson (Custos of St. James), The Hon. Royland Bancroft-Barrett (Custos of Trelawny), The Hon. Mavis Witter-King (Custos of Hanover).

EXHIBIT H

MAR-03-2009 12:23 PM   SPEEDY-SUPPORT-SERVICES   876 9528556        P.10

Date: 30/1/09

Name of Crewmember: John Watt

ID NO.: _____ Position: _____ Ship: _____

Diagnosis: Uncontrolled hypertension

Physical findings: BP 140/80

Subjective Complaints: ~~Feels~~ Pain in the knee on Standing, having occasional dizziness

Objective Complaints: / none

Treatment plan/ Follow Up Date: Continue the present medication

Referral to Specialist:

Restrictions, if any? Duration of restrictions & specific limits eg: time/weight etc:

---

**Mandatory: Crewmember Medical Discharge Information:**

To Whom It May Concern:

I have examined Mr. /Ms John Watt and find it true and correct that as of _____ The following applies:

Maximum Medical Improvement?  ☐ Yes  ☒ No

The definition of Maximum Medical Cure is as follows: The accepted legal standard holds that maximum cure is achieved when it appears probable that further treatment will result in no betterment of the seaman's condition. Thus, where it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improves the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved.

Is crewmember Fit for Duty?  ☐ Yes  ☒ No

Fit to Travel?  ☐ Yes  ☒ No

Physicians Signature _____  Date 30/1/09

Physician's Name (Print) Kenneth Lee

EXHIBIT I

MAR-03-2009 12:36 PM    SPEEDY-SUPPORT-SERVICES    876 9528556

18-2-04

Lilliputt Dist.

Montego Bay P.O.#1

St. James

Feb. 18 2009


Lennon and Morris

Freeport

Montego Bay

St James


Hello Mr. Shane

I am asking why Miami stop therapy on my knee and I am still feeling the pain.

Richard O. Deenah had told me that Miami seize therapy until further notice.

I am still waiting but didn't get any reply from Miami.

Dr. Gilbert ask me on Friday 13 Feb. 2009 if I am still doing therapy, I told him no.

Yours Sincerely,

John Watt

**EXHIBIT J**

Lilliputt Dist.

Montego Bay P.O.#1

St. James

Mar. 27 2009


Lennon and Morris

Freeport

Montego Bay

St James


Hello Mr. Shane

I am requesting a little more therapy on my knee because it is still paining me a little.

I hope Miami will grant my request this time. If not let me know in writing or by phone.


Yours Sincerely.

John Watt

EXHIBIT K

# SOTOLONGO, P.A.

Tower Suite Two
13499 Biscayne Blvd
Miami, Florida 331

Telephone: (305) 371-8654
Facsimile: (305) 371-8667

e-mail: psotolongo@sotolongolaw.com

Peter P. Sotolongo, Esquire

May 26, 2009

_Via facsimile to: (305) 436-4117_
Stehil Ozdoba
Norwegian Cruise Lines
Risk Management Department
7665 Corporate Center Drive
Miami, Florida 33126

|     | Re: | Seaman: | John Watt |
|-----|-----|---------|-----------|
|     |     | D/O/A: | February 2008 |
|     |     | Position: | Bar Tender |

Dear Mrs. Ozdoba:

My office has the pleasure of representing John Watts to file a claim for damages against NCL. Mr. Watt's worked for NCL for approximately 30 years until he was forced to retire "on medical grounds" due to medical conditions including, hypertension, diabetes, and left knee pain due to a torn left knee meniscus injury he sustained and/or manifested during his course of employment onboard NCL ships. We understand that Mr. Watt was seen onboard ship by NCL physicians and shoreside before he was last signed off on March 29, 2008. Please provide a copy of all his medical records, accident reports, and entire personnel file, including all employment contracts with NCL. _A Medical Authorization has also been attached as Exhibit "A"._

As you may know, Mr. Watt underwent left knee surgery on October 26, 2008. _A copy of the medical record is attached as Composite Exhibit "B"._ However, Mr. Watt continued experiencing left knee pain post surgery; which has been documented by his treating physicians, Dr. Don Gilbert and Dr. Kenneth Lee. _A copy of the medical record is attached as Exhibit "C"._ Despite Mr. Watt's continuing left knee pain and problems, NCL has failed to provide 1) a knee brace Dr. Gilbert ordered, 2) physical therapy Dr. Gilber Ordered, and/or 3) any post operation diagnostic tests of the left knee. _A copy of letters from Mr. Watt requesting treatment is attached as Composite Exhibit "D"._ Please note that NCL's agent in Jamaica refused to provide the knee brace to Mr. Watt's unless he first paid for it because they claim that NCL takes too long to reimburse them. Mr. Watt is indigent and cannot afford to pay for a knee brace at this time, thus he is currently using a knee brace he borrowed from a friend. Moreover, despite Mr. Watt's continued pain and discomfort, NCL discontinued his physiotherapy, and refuses to authorize it to date, although Mr. Watt's has _not_ been shown any evidence that he has been declared to have reached maximum medical improvement by Dr. Gilbert.

We request that NCL provide cure per NCL's legal obligations to provide same. We also demand that you pay Mr. Watt's unearned wages. Please look into this matter as soon as possible and advise accordingly. Any further contact with the seaman regarding any aspect of this claim should be through my office.

Very truly yours,

Peter P. Sotolongo

Enclosure

P. 01

TRANSACTION REPORT

MAY-26-2009 TUE 10:48 AM

TX (MEMORY)

| # | DATE | START TM | RECEIVER | COM TIME | PGS | TYPE/NOTE | | DEPT | FILE |
|---|------|----------|----------|----------|-----|-----------|---|------|------|
| 1 | MAY-26 | 10:45 AM | 3054384117 | 0:02:19 | 11 | ECM | OK | | 580 |
| | | | TOTAL | 0:02:19 | 11 | | | | |

# SOTOLONGO, P.A.

Tower Suite Two
13499 Biscayne Blvd
Miami, Florida 331

Telephone: (305) 371-8654
Facsimile: (305) 371-8667

e-mail: psotolongo@sotolongolaw.com

Peter P. Sotolongo, Esquire
_____

May 26, 2009

<u>*Via facsimile to: (305) 436-4117*</u>
Stehil Ozdoba
Norwegian Cruise Lines
Risk Management Department
7665 Corporate Center Drive
Miami, Florida 33126

    Re:   Seaman:    John Watt
           D/O/A:     February 2008
           Position:   Bar Tender

Dear Mrs. Ozdoba:

    My office has the pleasure of representing John Watts to file a claim for damages against NCL. Mr. Watt's worked for NCL for approximately 30 years until he was forced to retire "on medical grounds" due to medical conditions including, hypertension, diabetes, and left knee pain due to a torn left knee meniscus injury he sustained and/or manifested during his course of employment onboard NCL ships. We understand that Mr. Watt was seen onboard ship by NCL physicians and shoreside before he was last signed off on March 29, 2008. Please provide a copy of all his medical records, accident reports, and entire personnel file, including all employment contracts with NCL. *A Medical Authorization has also been attached as Exhibit "A".*

    As you may know, Mr. Watt underwent left knee surgery on October 26, 2008. *A copy of the medical record is attached as Composite Exhibit "B".* However, Mr. Watt continued experiencing left knee pain post surgery; which has been documented by his treating physicians, Dr. Don Gilbert and Dr. Kenneth Lee. *A copy of the medical record is attached as Exhibit "C".* Despite Mr. Watt's continuing left knee pain and problems, NCL has failed to provide 1) a knee brace Dr. Gilbert ordered, 2) physical therapy Dr. Gilber Ordered, and/or 3) any post operation diagnostic tests of the left knee. *A copy of letters from Mr. Watt requesting treatment is attached as Composite Exhibit "D".* Please note that NCL's agent in Jamaica refused to provide the knee brace to Mr. Watt's unless he first paid for it because they claim that NCL takes too long to reimburse them. Mr. Watt is indigent and cannot afford to pay for a knee brace at this time, thus he is currently using a knee brace he borrowed from a friend. Moreover, despite Mr. Watt's continued pain and discomfort NCL discontinued his physiotherapy, and

EXHIBIT L

06/04/2009  THU 16:04  FAX                                                    ☒002/002



NORWEGIAN CRUISE LINE
FREESTYLE CRUISING·

**VIA FACSIMILE (305) 371-8667**

June 4, 2009

Mr. Peter Sotolongo
Sotolongo, P.A.
M-104 Biscayne Building
19 West Flagler Street
Miami, FL 33130

Re: John Watt
        Norwegian Dream

Dear Mr. Sotolongo:

Please be advised we have made medical arrangements for your client to be seen by Dr. Don Gilbert for his follow up visit on June 9, 2009.

Should your client not be able to attend the follow up appointment we have scheduled on his behalf; please immediately advise so that we may reschedule.

Yours truly,

Jacqueline Oriol
Claims Representative

/jo

EXHIBIT M



**MONTEGO FREEPORT SHOPPING CENTRE**
**SHOP #3**
**MONTEGO BAY, ST. JAMES, JAMAICA, W.I.**
**876 - 469 - ERGO (3746)**

## JOHN WATT'S REHABILITATION REPORT

July 15, 2009

RE:  CURRENT FUNCTIONAL STATUS REPORT ON *(John Watt)*

## Diagnosis:

Osteoarthritis (O) Knee

## Treatments:

Sessions consisted of – Moist heat, Ultra Sound; massage, progressive strengthening of core muscles and both lower extremities; dynamic /static balance and proprioception in standing and gait training.  Patient has been instructed in a home exercise program, and appears to be compliant with same.

## Current status:

Mr. Watt reports 3-4/10 pain of the medial aspect of the (L) Knee, as wt-bearing progressive thru' out the day.  There is no pain and/or feeling of abnormality at the start of the day.  The anterior joint line and patella tendon pain have resolved.   There is no measurable edema/ effusion.    Veins are significantly distended (L) ant thigh and ant-med upper leg, with prolonged dependency  Resolves during exercises and at rest.

● Page 2

## Girth

(L)\(R) 5" below Knee 18 3/8"\17 3/4"; at joint line 14"; at 5" above 18 3/8"\17 ¾"
 Active range of motion is full bilaterally.
Strength is well within normal limits (B) Lower Exties /x (L) hamstrings , Hip ext 4+/5; (B)
gastrocnemius 3+/5  and Ankle dorsi-flexors 3/5
Sensation/ Reflex - intact
Function – Mr Watt ambulates /s and assist device, (L) stance time is greater and stride
length longer than Rt.  Stair climbing is reciprocal /s rail. There is still mild valgus
deformity w/ (L) wt-bearing, despite use of brace. He is able to ambulate +/- 30mins. /s
brace, w/o discomfort.  Endurance is only fair- unable to perform 10mins of continuous
activities (fixed cycle or elliptic) w/o extreme fatigue. Dynamic/static balance and
proprioception are poor+/fair+

## Recommendation:

While Mr Watt has improved in strength, pain levels and function of the (L) lower
extremity, he is still significantly limited in dynamic balance and stability of the (L) Knee
responsiveness to perturbance, and ambulation on uneven surfaces.  He would benefit
from additional sessions to improve strength and stability, normalize gait pattern and
assure safety in high level wt-bearing activities.

This concludes the therapist's report for Mr. John Watt.  I trust this report meets your
needs.  If you have any questions or concerns regarding the content of this report, or
require further assistance with the implementation of the recommendations, please
do not hesitate to contact the undersigned at 876-469-ERGO (3746).  This therapist
is available as needed to provide further assistance.


Sincerely,

BIOKINERGO
Per:

Audrey McIntosh, PT, ATC
Registered Physical Therapist

Cc.     John Watt

25-8-09    28-7-09



## STACEY RIDGUARD
### REGISTERED PHYSIOTHERAPIST
Dip. PT (U.H.W.I.), MSc Neurorehab (Brunel, London)

**TOTAL THERAPY**

17 ROSE STREET
SAV-LA-MAR
(876) 955-3151
(876) 858-9878

BARNETT CLINIC
COTTAGE CLOSE
(OFF COTTAGE ROAD)
MONTEGO BAY
(876) 953-4174
(876) 858-9878

### REFERRAL FORM

Name: _John Watt_

Address: _____

Age: _68_   Sex: (M) F   Tele: _____

Diagnosis: _Early Osteoarthritis ® Knee_

Medical History: _____

Medication: _____

Treatment Required (Tick as appropriate below):

Comments:

| Treatment |
|-----------|
| At Therapist Discretion |
| Heat/Cold Therapy |
| Cervical Traction |
| T.E.N.S |
| Ultrasound |
| Hydrotherapy |
| Electrical Stimulation |
| Ambulation (NWB, FWB, PWB) |
| Chest Therapy |
| Exercise (Strengthening, R.O.M) |
| Ante/Post Natal Exercises |
| Massages |
| Home Visit |

Aim:- Strengthen ® Quadriceps
and hamstrings.
- Improve stability in ℗
Knee.

**Also Available:** Crutches, Walkers, Canes, Supports/Braces, Grippers,
Hand balls, Exercise bands, Pain Ointments.

Next Doctor's Visit:        Doctor's Signature:

_____        _____



EXHIBIT N

```
          2009 10 01 email from pps to er attaching 08 11 2009 ltr from dr gilbert
From:    Peter Sotolongo
Sent:    Thursday, October 01, 2009 2:14 PM
To:      'Ramos, Eunices A.'; 'SKrause@ncl.com'
Cc:      'Novelette Hemmings'
Subject:       FW: John Watt
Attachments:   2009 08 11 med record from dr gilbert.pdf
```

Ms. Ramos,
Please find attached Dr. Gilbert's August 11, 2009 letter.
Thank you.

From: Peter Sotolongo
Sent: Thursday, October 01, 2009 2:06 PM
To: 'Ramos, Eunices A.'; 'SKrause@ncl.com'
Cc: 'Novelette Hemmings'
Subject: FW: John Watt

Ms. Ramos,

        thank you for your letter of September 24, 2009 in response to the email I
sent to you below. I
was simply reporting to you that Mr. Watt was still experiencing pain which was
causing him to
continue to use a knee brace, and that perhaps an MRI could help rule out any
concerns or issues. Your
response on September 24, 2009, basically advised me that "we are not physicians and
cannot make
arrangements for MRI's unless they are requested by the treating physician." Well,
today, Mr. Watt's
was given a letter dated August 11, 2009 by NCL's agent (Shane Moxan) in Jamaica,
which indicates
that Mr. Watt was seen on July 28, 2009, by Dr. Don Gilbert, who reported that Mr.
Watt's "will require
a left total knee replacement in the future."

        I need to know the following from you or NCL: 1) Did you have a copy of this
letter before
today? 2) Why was I not provided with a copy from NCL in August 2009. 3) If you had
not seen this
letter before today, I need to know whether you were aware that this letter existed
in August 2009. 4)
I also need to know why NCL's agent did not provide Mr. Watt with a copy of this
letter before today?

        Your attention to this matter will be greatly appreciated.

               Please remember that under the Jones Act and U.S. Maritime law, there
is a presumption in
favor of entitlement to maintenance and cure, and NCL has a duty to promptly
investigate and pay for
treatment. Failure to provide adequate medical treatment will subject NCL to tort
damages, including
punitive damages and attorney fees, for aggravation of the injury or illness.

Sincerely,

Peter P. Sotolongo, Esquire
SOTOLONGO, P.A.
Tower Suite Two
13499 Biscayne Boulevard
Miami, Florida 33181
(305) 371-8654 Telephone
(305) 371-8667 Facsimile
                              Page 1

2009 10 01 email from pps to er attaching 08 11 2009 ltr from dr gilbert

The contents of this communication, together with any attachments are intended only for the use of the
individual or entity to which they are addressed and may contain information that is legally privileged, confidential
and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any
dissemination, distribution, or copying of this communication, or any attachment is prohibited. If you have
received this communication in error, please notify Sotolongo, P.A. by return e-mail or telephone 305-371-8654
and delete this communication along with any attachments from your computer. Thank you.

From: Peter Sotolongo
Sent: Thursday, September 24, 2009 10:50 AM
To: 'Ramos, Eunices A.'
Cc: 'Novelette Hemmings'
Subject: John Watt

Ms. Ramos,

Thank you for your letter of September 18, 2009 confirming that that NCL has authorized 12 additional
sessions and a follow up with the orthopedist thereafter. I spoke to Mr. Watt today, and he advised
me that he is still using a knee brace because of knee pain and that he has had no diagnostic tests post
surgery whatsoever despite his continuous complaints of knee pain. Please have NCL approve/authorize for Mr. Watt to undergo an MRI prior to seeing the orthopedist.

Please remember that under the Jones Act and U.S. Maritime law, there is a presumption in favor of
entitlement to maintenance and cure, and NCL has a duty to promptly investigate and pay for
treatment. Failure to provide adequate medical treatment will subject NCL to tort damages, including
punitive damages and attorney fees, for aggravation of the injury or illness.

Your attention to this matter is appreciated.

Sincerely,

Peter P. Sotolongo, Esquire
SOTOLONGO, P.A.
Tower Suite Two
13499 Biscayne Boulevard
Miami, Florida 33181
(305) 371-8654 Telephone
(305) 371-8667 Facsimile

The contents of this communication, together with any attachments are intended only for the use of the
individual or entity to which they are addressed and may contain information that is legally privileged, confidential
and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any
dissemination, distribution, or copying of this communication, or any attachment is prohibited. If you have
received this communication in error, please notify Sotolongo, P.A. by return e-mail or telephone 305-371-8654

Page 2

2009 10 01 email from pps to er attaching 08 11 2009 ltr from dr gilbert
and delete this communication along with any attachments from your computer. Thank
you.

# MOBAY HOPE

*" Where There Is Hope.... There Is Life "*

**MEDICAL CENTRE**
HALF MOON SHOPPING VILLAGE
P.O. BOX 2520, HALF MOON P.O.
ROSEHALL, MONTEGO BAY, JAMAICA
FALMOUTH BRANCH: 13 RODNEY STREET

Tel: (876) 953-3649/3951/9310/2712
Fax: (876) 953-9160
email: mobayhope@cwjamaica.com
www.mobayhope.org
TEL: (876) 617-5511 • FAX: (876) 617-5903

August 11, 2009

Mr. Shane Moxam
Port Agent
Lannaman and Morris (Shipping) Ltd.
Montego Freeport

Dear Mr. Moxam

**RE: WATT, JOHN**

The above mentioned individual was reviewed by me on July 28, 2009, at which time he complained of mild pain on the medial side of the left knee.

On examination there was mild wasting of the left thigh muscle but full range of motion in the knee with no ligamentous laxity. There was crepitation in the knee consistent with osteoarthritis and so Mr. Watt was advised to continue physiotherapy to strengthen the left quadriceps muscle.

Mr. Watt has osteoarthritis of the left knee and will require a left total knee replacement in the future. His physiotherapy regime is aimed at maintaining the range of motion and quadriceps muscle strength in the left knee. Mr. Watt will be reviewed in September 2009.

Yours sincerely,

Dr. Don Gilbert, MBBS, FRCSEd, DM
Orthopedic Surgeon

BOARD OF DIRECTORS: Sydney Engel (Chairman), Jaime L. Delgado (Secretary), Ripton Macpherson, Kumar Samtani, Denny Chandiram, Richard Russell, Joseph Hylton, Sylvia Engel, James Goren, D. Wayne Brackin, Ambassador Glen A. Holden
Honorary Board Members: The Hon. Clarence Nelson (Custos of St. James); The Hon. Royland Bancroft Barrett (Custos of Trelawny), The Hon. Mavis Wittar-King (Custos of Hanover).

SEP-30-2009 03:03 PM   SPEEDY-SUPPORT-SERVICES   876 9528556

P.02

# nci

**Northcoast Imaging**
**MRI Services**

SUITE 37, MONTEGO FREEPORT SHOPPING CENTRE, MONTEGO BAY, ST. JAMES
PHONE: 684-9656-7 ● FAX: 684-9515 ● EMAIL: nci@cwjamaica.com

## MRI REQUEST FORM

OPENING HOURS: MON. - FRI. 8:00 A.M. - 4:00 P.M.

**FOR OFFICE USE ONLY**

No. _____
DATE _____
COST _____
INS. _____
CO-PAY _____
PAID _____
BALANCE _____

### PATIENT INFORMATION

SURNAME _____Watt_____   FIRST _____John_____   M.I. _____

ADDRESS _____

TEL # (H) _____ (W) _____ (C) _____

D.O.B. _____ AGE _____69_____ SEX: F/(M) ALLERGIES _____
      DD / MM / YYYY

### REFERRING DOCTOR'S INFORMATION

TEL # _____

FAX _____

ADDRESS _____

SIGNATURE _____Dr Don Gilbert_____

### EXAMINATION REQUESTED

MRI (L) knee

### INSTRUCTIONS TO NCI

☐ REFERRAL FORMS NEEDED
☐ FAX REPORT
☐ SEND REPORT
☐ SEND FILMS

### CLINICAL HISTORY

Persistent medial sto (L) knee pain. Particularly worse on ascending stairs. No osteochondral defect.